Good morning. May it please the Court. My name is Helen A. Sklar. I am here on behalf of Petitioner Silverio Augusto Canel. The posture of this case is that Silverio Canel's application for cancellation of removal was denied by the immigration judge due to the bar at 8 U.S.C. 1229 B.B.B.1.C. pertaining to two crimes involving moral turpitude. The denial was affirmed by the BIA. Mr. Canel sought this Court's review of the question whether California Penal Code Section 647B is categorically a crime involving moral turpitude. The generic definition of morally turpitudinous conduct is conduct that is inherently base, vile, or depraved. Penal Code Section 647B basically includes the following elements. Before you get there, before we get into the Taylor analysis, the BIA clearly looked to its own precedents as well in construing the Federal statute as opposed to the State 647B statute. And I guess my question for you is, since they have a number of cases that were cited that they believe were analogous, they were published cases, do we not give them Chevron deference in this case? If I may, Your Honor, Matter of Lambert, of course, is the case that's cited most frequently does not involve elements that are really much like the elements in the statute at issue here. That case involves the letting of rooms for the purpose of prostitution, which had been the case. But did they not analogize that they're saying that the solicitation of prostitution facilitates prostitution similar to the letting of a room? It was an analogy, no question about it. Yes, Your Honor. And, you know, I think that the Board sometimes over time rethinks its decisions and its analyses within decisions and takes what are essentially completely contrary positions, which, you know, as the Court probably is aware, they have recently done in what I believe is unfortunately an unpublished decision. I do believe that, not that it's relevant here, but this is an area where decisions that are cited by the Board is that, you know, the holdings of the case and the specific statutes that are at issue, and this really is, you know, the Taylor analysis really is quite a precise statute that requires looking at the elements of the statute. Do you find the Taylor analysis helpful? I do. We find it maddingly, maddlingly confusing. We spend an enormous amount of time trying to make sense out of what the Supreme Court said in that case. So hopefully you can help us. Well, I will say that after spending many hours pondering whether I needed to reach the modified categorical approach in this case, it really does seem that Taylor's approach of the categorical approach leaves us with 647B being a unitary statute that is not divisible. Before we get to that, though, and I do want to hear what you say about the Taylor analysis, but if the Lambert case and the other cases referred to, I think there were some of our cases and additional nonpublished BIA cases to which we can give more deference that they rely upon primarily. Isn't the Federal statute and their construction of that sufficient so we don't even have to get to 647B, or do we need to do both in this case? Again, if they're correct, if we give them the deference and we acquiesce in the BIA's analysis, doesn't that take care of the issue so we never get to the Taylor analysis of 647B? Is this on the question of deference? Correct. I would say that the Court would not reach deference if the precedent decisions that had been that the board decision relies on, whether it cited 647B or not, involved a statute that has no proscribed act other than an agreement and, you know, a physical manifestation of some sort, although, as I understand it, even that can be substituted by words under, you know, at least California law if they're clear. So, I mean, really, when you look at the language of 647, just for analogy purposes, if we're talking about addressing that which this individual is convicted of, whether it's a Federal statute or a State statute, the truth is he was convicted of a statute that does nothing but proscribe an agreement and an act toward the agreement with the specific intent to do something lewd, ergo prostitution. And so my answer to your question is that if we were analogizing the case to the precise elements, then, yes, there would be a harder case to make for deference. Go ahead with the Taylor analysis, if you like. Well, I — our position, Your Honors, is that this should be deemed categorically not a moral turpitude crime, although I do believe that in light of this recent decision that I referred to, if the board is of the opinion that a statute that would be an analysis of the facts would enlighten the turpitudinousness of the conduct in this particular case, of course, that would not be something we would oppose, and we would seek the same remand that they prescribed in the Hoosvepian case. I notice that you made the argument that you couldn't have an analogous situation here because this was consenting conduct between two adults. But that would also be true of incest between two adults, and that would still be a CIMT under almost any definition. So how do you get around that? Well, there is an element of the concept of moral turpitudinousness for purposes of the — generally and for purposes of the INA that looks to social standards and, you know, what is deemed at least tolerable, if not — In San Francisco or Omaha? If not acceptable. In some — in some, shall we say, significant portions of the country. Not all of them, obviously. However — Are you suggesting to us that we have to base our analysis based upon where the case is heard or where the action allegedly occurred, and then we have to take a survey of what is considered socially appropriate? Well, Your Honor, I wouldn't argue for decriminalization of — Well, aren't you suggesting, though, that we can't be blind to overall changes in how society views some of these situations as evidence, for example, by homosexual relations, which were viewed universally 50 years ago as morally turpitudinous and now very rarely are in most areas. So it depends on what analogy you use, so to speak, how you come out. And there are so many examples of that, Your Honor. You know, simple possession of marijuana. You know, I remember, you know, the movies that I saw as a, you know, much younger person that portrayed — Re-ferments. Yeah, exactly. That portrayed a behavior that now, you know, is decriminalized in some areas. It's, you know, medically prescribed. So — It's a condition Presidents are running for office now. So, you know, there are precedents in the board decision that really do not guide the alien-seeking relief. And, you know, I don't know the direction the board is going with this particular statute or like statutes. But, you know, what I do think is that to the extent we understand the categorical approach, it does meet the — in my opinion, it does meet the definition of a unitary statute. And — We've run you over our time. Why don't we give you a minute to relax here. Let's hear from the government, and we'll give you a minute to respond. Okay? Thank you so much, Your Honor. Okay. Hear from the government. May it please the Court, Emanuel Palau, for the respondent in this case, the Attorney General. As you note — as the Court notes, rather, this case is a situation where the board concluded that as a categorical matter, Penal Code Section 647B qualifies as a crime involving moral turpitude because every element of that offense deals with prostitution. So the likelihood of that offense being applied to non-turpitudinous conduct is remote, and there have been no examples of actual cases where that's happened, presented by the Petitioner here. And secondly, the court — I'm sorry, the board, in deciding whether 647B is categorically a crime of moral turpitude, looked at its own precedents, published precedents, looked at State court decisions, and saw how they handled the offense of prostitution, and they cite at least five or six decisions from both sources published in which crimes involving prostitution, such as solicitation, agreeing to engage in prostitution and sex, and engaging in it are all treated as crimes involving moral turpitude. That's the analysis that's called for by this Court. So from the government's perspective, then, 647B, if we get to the Taylor analysis, it's clearly — it's decidable under categorical analysis. We never have to get to the modified category. Yes, sir. That's our position. And that's what the court did — I'm sorry, that's what the board did here. And because they followed their published precedents, and they also followed this Court's precedents in applying a categorical analysis, it's due Chevron deference. And the court can simply defer to the board's determination here that this particular offense is a crime involving moral turpitude. Do we have to defer, for example, in the Lambert situation? It's obviously an analogy. It's not exact. It is, however, construing a statute that it deals with. It's in its bailiwick, and it doesn't seem to be violative of Congress's clear intent. Under those circumstances, are we bound by the board's construction, or do we have de novo ability to review that? Well, the court has de novo ability to review that, but it's informed by Chevron deference if the court finds that applies. What we're saying is that the board here followed all the steps necessary under this Court's precedents to afford this finding, Chevron deference. What the Petitioner argues mainly in their brief are two points. First, it seeks to distinguish some of these authorities' published decisions that the board relied on because they didn't involve solicitation.  The second point is that they all involved prostitution, and that's what makes them a crime involving moral turpitude. Secondly, the notion by the Petitioner that sex with a prostitute is consensual sex, I think, needs to be addressed. It's not consensual. It's contractual. If you had consent, you wouldn't be paying money to someone. Prostitutes don't have any choice in who they're required to service. They have to take on a role. And if you have consent, you have to pay the price.   Roberts, do you have a comment on the concept? Well, it's not a – I know that the notion of prostitution lends itself to some lighthearted commentary, but the fact is, the reason it's a crime involving moral turpitude, Your Honor, as has been found, you know, for decades, is that it's a degrading, dehumanizing experience. And the notion of prostitution is a degrading experience, because, you know, in many cases prostitutes by and large except for perhaps Julie Roberts and Pretty Woman, they're generally taken advantage of and exploited physically, emotionally and financially by everyone involved. And that's – and solicitation is a central piece of that picture. And that's why courts – Petitioner contends that there's not a lot of explanation to some of these precedents as to why. I think it's self-evident. And I think that one reason there's not more explanation is because everyone knows what prostitution is and what it does. Secondly, the Hovsepian unpublished decision, which Petitioner cites, does not indicate any kind of lessening or acceptance of prostitution by the board. It strictly says that as a categorical matter, Lambert involved – sorry – in procurement, and what we have – what they had in 647B is solicitation. So those are two elements of prostitution, but they're not the same. So all Hovsepian really says is that Lambert's not controlling. It doesn't mean it's not persuasive and that the board shouldn't have cited it here. Judge Rakoff mentioned other types. This is not a situation, as far as I know, where society is going more and more tolerant of prostitution. Well, I mean, this is – I agree with you perhaps well beyond what needs to be decided in terms of this case. But there are large parts of the world where prostitution is legal. In Nevada, of course, it's partly legal. And it's not considered there a crime of moral turpitude. At least the legislature would be shocked if someone said when they approved prostitution in Nevada that they were committing – the legislature was committing a moral turpitude in this act. What leads to the very real evils that you have so eloquently mentioned is the fact that prostitution is illegal. That is what leads to the exploitation and the many evils that are involved. So it's really, if you will, a two-part analysis. It's not that it's inherently morally turpitude. It is that where it becomes – where it is banned, then the practice of it inevitably involves the kind of situations you've indicated. That's what makes it morally turpitude is there. Well, I would point out that you're not going to get universal concurrence on any kind of conduct as being turpitudinous or not. I mean, but I would distinguish this type of conduct from something like same-sex sex or interracial sex, which views have moderated on that. I'm just not aware that views have moderated on prostitution. And if that's indeed the case, as this Court has noted, a crime involving moral turpitude is a very ambiguous term. It appears in the Immigration and Nationality Act, and it's the job of the Board to give meaning to that term on a case-by-case basis. So if lines, different lines need to be drawn, the Board can do so in the first instance. And I don't think this case presents a vehicle for this Court to, especially given the analysis that was presented here, to enter into a wide-ranging, albeit interesting, discourse about whether it is a crime involving moral turpitude or not. I think the Board followed all the rules here, and their analysis is entitled to Chevron deference. So this case can simply be resolved by this Court, if it agrees with that, that that's the case, that they can defer to the Court's finding, the Board's finding in this case that this statute, because every element of which deals with prostitution, is categorically a crime involving moral turpitude. So I – and that first piece of it is subject to de novo review by this Court, but it's the second piece where the Court compares the elements of the offense here to the definition of crimes involving moral turpitude. That's where the Court does owe Chevron deference, I would argue, in this case, because the Board did not make this up out of whole cloth. They went back and looked at their published precedents and State court precedents which have held this to be the case. So under those circumstances, I would respectfully argue for Chevron deference here, and the Court denied the petition for review. The issue is raised periodically that it's not – there's nothing in the Board perhaps that's directly on point, so the Board has to reason from other – from its cases to the case before it. In that instance, how would you argue that Chevron deference should be granted if it's not really relying specifically with a case in point, but it's reasoning from a case that's analogous? Well, I think in that case, the Court certainly could look at the precedents that the Board relied on and reasoned from. And if the Court disagrees with the Board's reasoning from those precedents, which may not be quite on point, that might be a reason to not give it Chevron. Perhaps it would still be entitled to Skidmore. But I think here, I mean, if the – I'm not asking that question. That, of course, could happen. But what I'm saying is, is there a rule that you know of that automatically divests Chevron deference if there isn't a case directly in point by the Board? I'm not aware of such a rule, Your Honor. I mean, I – How would you argue that there shouldn't be such a rule? Well, I think the biggest reason in the context you're talking about to accord Chevron deference here is what I just mentioned, which is it's – Congress has delegated to the Attorney General and down to the Board the authority to, in the first instance, be the person to define ambiguous terms in the Immigration and Nationality Act. As this Court has noted, crimes involving moral turpitude is a – is such a term, and I believe the Court should defer to the Board in the first instance to define what that is. If the Board – if the Court disagrees with that, then it – perhaps it won't give it either Chevron or Skidmore deference. Here, I think the cases relied on were – all involve prostitution, and that's close enough. Would they all involve facilitating prostitution, which is even closer for your – for the government's position, I assume. Well, thanks for your comment. Thank you, Your Honor. All right. We'll give you a minute to respond. If I may, Your Honor, I would like to address the last point just briefly, the question that you raised. It seems to me that if the rule requires that there be a precedent decision that the Board relied on, doesn't that mean that if there's no precedent decision, if they're relying on a Board – on another decision from which they have to extrapolate or from decisions from other jurisdictions where they're extrapolating? You know, of the decisions in – the Board decision in this case, there – I don't know that there was any analysis of the meaning of crimes involving moral turpitude for purposes of the – under the Immigration Nationality Act. So I don't even know if there was a close enough connection between the decisions cited in the case for there to be, you know, a reasonable extrapolation or analogy drawn. Do you know of any cases that say that where an agency, in this case the BIA that has charge, if you will, of construing a certain statute, where it uses an analogous but not right-on-point case, whether that's entitled to Chevron deference? In other words, can you give Chevron deference when you are not relying upon a case that's on all fours? Well, I would argue no, simply because – No, I know you're going to argue that, but I ask you because that's a case. Oh, I – no, Your Honor, I am not aware of a case. Okay. And I was also aware that that really is a very central question in this case. Okay. And so I – that's the basis for my taking a position and arguing it. Okay. We've kind of run out of time, but we thank you both for your argument. And we will now submit Connell-Velasquez v. Holder.
judges: Rakoff, Wallace, Smith